[Cite as *State v. Magee*, 2024-Ohio-2016.]

IN THE COURT OF APPEALS OF OHIO
SIXTH APPELLATE DISTRICT
SANDUSKY COUNTY

State of Ohio                                    Court of Appeals No. S-23-009

    Appellee                              Trial Court No.  21 CR 402

v.

Robert Magee                              **DECISION AND JUDGMENT**

    Appellant                            Decided:  May 24, 2024

* * * * *

Beth A. Tischler, Sandusky County Prosecuting Attorney, and
Alexis M. Otero, Assistant Prosecuting Attorney, for appellee.

Loretta Riddle, for appellant.

* * * * *

**MAYLE, J.**

{¶ 1} Appellant, Robert Magee, appeals the judgment of the Sandusky County
Court of Common Pleas, following a jury trial, that convicted him of six counts of
trafficking in drugs and sentenced him to an indefinite term of 10 to 15 years in prison.
For the following reasons, we affirm the trial court's judgment.

# I. Background

{¶ 2} On June 2, 2021, the Sandusky County Grand Jury returned a six-count indictment against Magee, charging him with four counts of trafficking in drugs in violation of R.C. 2925.03(A)(1) and (C)(1)(d), felonies of the first degree; one count of trafficking in drugs in violation of R.C. 2925.03(A)(1) and (C)(1)(d), a felony of the second degree; and one count of trafficking in drugs in violation of R.C. 2925.03(A)(1) and (C)(1)(a), a felony of the fourth degree. The charges arose from a series of controlled drug buys performed by a confidential informant.

{¶ 3} A two-day jury trial was held beginning on February 7, 2023, at which the following evidence was presented. The State's lead witness was Detective Sergeant Dustin Nowak of the Fremont Police Department. Nowak testified that he had contact with a confidential informant who could purchase drugs from a person named "Chop." Nowak later identified "Chop" as Magee, stating, "I -- when I was advised by an informant is when I found out who Robert Magee -- well, I found out a subject by the name is -- of Chop, and then I was able to identify Chop as Robert Magee." He began to explain that he learned who Chop was through a DEA Task Force contact out of Mississippi, but the trial court sustained an objection to that testimony.

{¶ 4} Nowak set up a number of controlled buys with the confidential informant from the person that Nowak knew as Chop or Magee. On July 13, 2020, the informant met with Nowak and informed him that he had already spoken with Chop and had arranged a price and quantity for a purchase of ecstasy. Nowak and the informant then

2.

made a recorded phone call to Chop who directed the informant to go to 812 Birchard Ave. in Fremont, Ohio. Nowak prepared the informant by searching his car and person to verify that he did not possess any contraband, and then providing him with previously photocopied money to use to purchase the drugs as well as an audio and video recording device. He followed the informant to the location of the transaction at 812 Birchard Ave., where he conducted surveillance while the informant completed the transaction. Nowak then followed the informant back to the pre-arranged meeting location where the informant handed over the drugs that were purchased. Finally, the informant's car and person were searched again to verify that no other contraband was present. Similar procedures were followed for additional controlled buys on July 15, August 7, and August 19, 2020. Video recordings of each of the transactions were entered into evidence and played for the jury. Still images from the videos were also entered into evidence. Nowak identified the individual in the videos and still images as Magee.

{¶ 5} A fifth controlled buy was conducted on September 1, 2020. On that occasion, the confidential informant arranged a purchase of 600 pills of ecstasy, equaling the total amount of pills in the four previous buys combined. Rather than meeting at 812 Birchard Avenue, the seller instructed the informant to meet him on Jackson Street. Video from the transaction shows an individual getting into the informant's vehicle and pulling a blue bag out of his pants which he hands to the informant. The individual's face is never shown. Nowak testified that the blue bag contained the drugs.

3.

**{¶ 6}** On cross-examination, Nowak admitted that he did not personally observe any of the drug transactions that were recorded. Further, while he had a Bureau of Motor Vehicles picture of Magee, he did not know him before this investigation nor was he familiar with his voice.

**{¶ 7}** Deputy Sergeant Brian McGrady of the Sandusky County Sheriff's Office and Agent Brad Doolittle with the Narcotics Division of the Ohio Bureau of Criminal Investigation ("BCI") testified that they participated in the search and surveillance of the confidential informant during several of the controlled buys. Both testified, however, that they did not personally observe any of the drug transactions.

**{¶ 8}** BCI Forensic Scientist Sara Tipton testified that the pills recovered from the first four controlled buys contained methamphetamine, a Schedule II controlled substance. Likewise, BCI Forensic Scientist Anna Petro testified that the pills recovered from the September 1, 2020 controlled buy contained methamphetamine and cathinone.

**{¶ 9}** Finally, Scott Kieffer who works for the Sandusky County Auditor testified that 812 Birchard Avenue was located within 1,000 feet of a school-owned property.

**{¶ 10}** The defense did not call any witnesses or present any evidence.

**{¶ 11}** Following deliberations, the jury returned a verdict of guilty as to all counts. At sentencing, the trial court ordered Magee to serve a total indefinite term of 10 to 15 years in prison.

4.

{¶ 12} Magee timely appealed his judgment of conviction and now asserts three assignments of error for review:

1. Mr. Magee was denied his right to confrontation in violation of the Sixth and Fourteenth Amendments to the U.S. Constitution and Sections 10 and 16, Article I of the Ohio Constitution.

2. Robert Magee received constitutionally ineffective assistance of counsel.

3. The cumulative effect of the errors committed at trial denied appellant of a fair trial and requires reversal.

## II. Law and Analysis

### A. Right to Confrontation

{¶ 13} In his first assignment of error, Magee argues that his right to confront the witnesses against him was violated.

{¶ 14} The Sixth Amendment to the Constitution of the United States provides that "[i]n all criminal prosecutions, the accused shall enjoy the right . . . to be confronted with the witnesses against him." Article I, Section 10 of the Ohio Constitution similarly provides that "[i]n any trial, in any court, the party accused shall be allowed . . . to meet the witnesses face to face." The protections afforded by these two provisions are coextensive. *See State v. Arnold*, 2010-Ohio-2742, ¶ 12, citing *State v. Self*, 56 Ohio

St.3d 73, 79 (1990) ("Section 10, Article I [of the Ohio Constitution] provides no greater right of confrontation than the Sixth Amendment.").[1]

{¶ 15} "The 'primary object' of [the confrontation clause] is to prevent unchallenged testimony from being used to convict an accused—a safeguard that applies to both federal and state prosecutions." *Carter* at ¶ 27, quoting *Mattox v. United States*, 156 U.S. 237, 242 (1895); *Crawford v. Washington*, 541 U.S. 36, 42, 53-54 (2004). "The provision encompasses the right to have a witness physically appear in the courtroom, to require the witness to testify under oath, and to force the witness to be subject to cross-examination." *Id.* "Importantly, it has been understood to 'guarantee[] the defendant a face-to-face meeting with witnesses appearing before the trier of fact.'" *Id.*, quoting *Coy v. Iowa*, 487 U.S. 1012, 1016 (1988).

{¶ 16} "Admission of an out-of-court statement of a witness who does not appear at trial is prohibited by the Confrontation Clause if the statement is testimonial unless the witness is unavailable and the defendant had had a prior opportunity to cross-examine the witness." *State v. Jones*, 2012-Ohio-5677, ¶ 137, citing *Crawford* at 54. "A statement is testimonial if made 'under circumstances which would lead an objective witness

---

[1] The Confrontation Clause was recently before the Ohio Supreme Court in *State v. Carter*, Slip Opinion No. 2024-Ohio-1247, ¶ 33. In that case, the court recognized the possible argument that the Ohio Constitution provides greater rights to the accused than does the United States Constitution. The court noted, however, that such an argument was rejected in *State v. Madison*, 64 Ohio St.2d 322, 330 (1980), and *Self* at 79. Because the petitioner in *Carter* did not ask the court to revisit the issue of whether the state and federal constitutions' provisions were coextensive, the Ohio Supreme Court constrained its analysis to the federal standard upon which he relied. *Carter* at ¶ 34.

reasonably to believe that the statement would be available for use at a later trial.'" *State v. Stevenson*, 2023-Ohio-4853, ¶ 60 (6th Dist.), quoting *State v. Stahl*, 2006-Ohio-5482, ¶ 46. But, the confrontation clause "does not bar the use of testimonial statements for purposes other than establishing the truth of the matter asserted." *State v. Ricks*, 2013-Ohio-3712, ¶ 18, quoting *Crawford* at 59, fn. 9. Stated another way, "[o]nly testimonial hearsay implicates the Confrontation Clause." *State v. McKelton*, 2016-Ohio-5735, ¶ 185, citing *Davis v. Washington*, 547 U.S. 813, 821 (2006).

{¶ 17} Hearsay "is a statement, other than one made by the declarant while testifying at the trial or hearing, offered in evidence to prove the truth of the matter asserted in the statement." Evid.R. 801(C). "A statement is not hearsay if: [it] is offered against a party and is (a) the party's own statement, in either an individual or a representative capacity." Evid.R. 801(D)(2).

{¶ 18} Here, Magee has enumerated ten statements from the trial that he believes violated his rights to confront the witnesses against him.[2] The state does not contest the testimonial nature of those statements and for purposes of this analysis we will accept that they are in fact testimonial. For ease of discussion, we will reorder the statements identified by Magee.

{¶ 19} The largest category of statements come from the audio and video recordings of the drug transactions. Specifically, Magee listed,

---

[2] Magee has also identified several statements made by the prosecutor in opening arguments. Because opening arguments are not evidence, however, the prosecutor's statements cannot constitute hearsay nor violate Magee's confrontation clause rights.

7.

1. "Q. In the recording where you hear someone say, 'O.G., where you at,' who is that? A. That's the informant. Q. And when you hear in the recording, 'Swing around the corner on Birchard,' who is that? A. Robert Magee."

2. "Q. Detective Sergeant, did you hear someone on that recording say, 'Are these triples'? A. Yes, ma'am. Q. Who said that? A. The informant. Q. And did you hear someone on that recording say, 'Do you take'em'? A. Yes, ma'am. Q. Who said that? A. The informant. Q. Did you hear someone say, 'I don't take'em; I only move them.' A. Yes, ma'am. Q. Who said that? A. Mr. Magee."

3. "Q. Detective Sergeant, who are those voices that you hear on the video? A. The confidential informant, Mr. Magee. Q. And what are they talking about? A. The strength of the drugs."

4. "Q. Detective Sergeant Nowak, did you hear someone say, 'If you do get more of those' something to the effect of… 'let me know'? A. (Nod indicating yes). Q. Who was saying that? A. The informant."

5. "Q. All right. Who's voice says, 'I need six of them. Are you at the crib?' A. The informant. Q. All right. And who says, '600'? A. Robert Magee."

{¶ 20} For each of those statements, Nowak was testifying regarding what could be heard on the audio and video recordings that were entered into evidence and played

for the jury. "Ohio courts have routinely recognized that 'audio recordings of actual drug transactions are not hearsay, and . . . the introduction of such recordings does not violate the confrontation clause.'" *State v. Fitts*, 2020-Ohio-1154, ¶ 25 (6th Dist.), quoting *State v. Ward*, 2012-Ohio-988, ¶ 45 (3d Dist.). As it pertains to the confidential informant's statements, "[s]uch statements are merely necessary to establish the context of the defendant's statements and responses, and therefore not offered to prove the truth of the matter asserted." *State v. Hill*, 1990 WL 237485, *4 (5th Dist. Dec. 31, 1990); *see also State v. Martin*, 2019-Ohio-4931, ¶ 16 (5th Dist.) ("The comments of the confidential informant on such a recording are not hearsay, as they give context to a defendant's statements and are not offered to prove the truth of the matter asserted."). Thus, although the confidential informant's voice was heard in those recordings and he did not testify at the trial, the inclusion of those recordings did not constitute hearsay and did not violate Magee's rights under the confrontation clause.

{¶ 21} Magee also takes issue with Nowak's identification of the speakers heard in the recordings. Similarly, Magee identifies two separate statements by Nowak as problematic:

> 6. "Q. All right. Is this the individual, Detective Sergeant Nowak, that the informant made contact with at 812 Birchard Avenue? A. Yes, ma'am. Q. And, based on your knowledge of the investigation, is this the individual that sold Methampetamine to the informant on Birchard Avenue? A. Yes, ma'am. Q. Who is that person? A. Robert Magee."

9.

7. "Q. All right. And were you familiar with – not just with Chop, but with Chop being Robert Magee? A. Yes, ma'am. Q. And who are we looking at here? A. Robert Magee. Q. Okay. And is this the person that did sell the drugs to the informant on that date? A. Yes, ma'am."

{¶ 22} In these instances, Nowak is directly testifying to his identification of the seller; there are no out-of-court statements that are being relayed to the jury. Because Nowak provided this testimony in court, Magee obviously had the opportunity to confront Nowak on cross-examination to inquire into Nowak's personal knowledge and ability to identify Magee as the seller otherwise known as Chop. Therefore, these statements were not hearsay and did not violate Magee's confrontation clause rights.

{¶ 23} Next, Magee lists two instances where Nowak testified regarding Magee's own statements:

8. "We -- we made a -- we also made a recorded telephone call with the informant to Chop. Chop advised the informant to come to 812 Birchard, in which we then did."

9. "Prior to go[ing] to 812 Birchard Ave., Mr. Magee called the informant and advised them -- advised the informant to come to Jackson Street."

Here, because the out-of-court statements presented were his own, they were not hearsay and Magee simply cannot claim that his right to confront the witness—i.e., himself—was violated.

10.

**{¶ 24}** Finally, Magee contends that his confrontation clause rights were violated when Nowak testified,

> 10. "The informant met with me and said that he had already spoke with Chop and already arranged a price and quantity of Ecstasy."

In this instance, Nowak's testimony contains an out-of-court statement made by the confidential informant. The issue we must decide is whether the out-of-court statement was offered for the truth of the matter asserted or whether it was used to explain police conduct.

**{¶ 25}** In support of his position, Magee cites *State v. Ricks*, 2013-Ohio-3712, in which the Ohio Supreme Court held that out-of-court statements by a non-testifying witness which identified Ricks as "Peanut" violated Ricks' Confrontation Clause rights. In that case, the State introduced significant evidence implicating Aaron Gipson in a murder. Gipson did not testify at Ricks's trial, but an officer testified that Gipson identified that another person nicknamed "Peanut" was also involved. Gipson rode with the officer to point out Peanut's house and he identified the individual standing in front of the house as Peanut. The officer further testified that upon seeing Peanut, Gipson dropped down in the seat and was "upset and . . . scared" that Peanut might have seen him. *Id.* at ¶ 10. Later, the officer showed a picture of Ricks to Gipson, and Gipson replied "That's Peanut." *Id.* at ¶ 11. This testimony was admitted by the trial court with an instruction that it was not to be used for the truth of the matter asserted, but rather to

11.

explain police conduct in how they obtained a photograph of Ricks that they then showed to other witnesses. *Id.* at ¶ 12.

{¶ 26} On appeal to the Ohio Supreme Court, the Court held that "in order for testimony offered to explain police conduct to be admissible as nonhearsay, the conduct to be explained should be relevant, equivocal, and contemporaneous with the statements; the probative value of statements must not be substantially outweighed by the danger of unfair prejudice; and the statements cannot connect the accused with the crime charged." *Id.* at ¶ 27. Examining the officer's testimony, the Court reasoned that Gipson's statements were offered for the truth of the matter asserted because they connected Ricks to Gipson and to the crime. *Id.* at ¶ 39. The court noted that the testimony that Gipson was upset and scared upon seeing Peanut encouraged the jury to misuse "Gipson's statement 'That's Peanut' as a statement identifying who had been his accomplice in the murder rather than as evidence to explain why the police had obtained a photograph of Ricks to show to other witnesses." *Id.* Additionally, Gipson's response of "That's Peanut" upon seeing the photograph of Ricks "did not explain what had led the police to obtain the photograph; it gave value to the photograph as a piece of evidence. It gave an accomplice's seal of approval on the evidence and identified Thomas Ricks as Gipson's accomplice." *Id.* at ¶ 41. Therefore, the Court concluded that Gipson's statements constituted hearsay and violated Ricks's rights under the confrontation clause. *Id.* at ¶ 45.

12.

{¶ 27} Here, unlike *Ricks*, the informant's out of court statement that he spoke with Chop and had arranged a price and quantity of ecstasy did not identify Chop as Magee. Indeed, Nowak never testified that the confidential informant linked Magee to Chop, and the informant never referred to the seller as Magee in the audio and video recordings, calling him "O.G." instead. The most the jury could have concluded from the informant's out-of-court statement was that a drug transaction with Chop had been arranged, but this fact was never really in dispute because it was confirmed by the audio and video recordings. Therefore, rather than being used for the truth of the matter asserted, the informant's out-of-court statement explained why Nowak conducted the contemporaneous controlled buy. As such, the informant's statement did not constitute hearsay and did not violate Magee's confrontation clause rights.

{¶ 28} Accordingly, because he was not denied his constitutional right to confront the witnesses against him, Magee's first assignment of error is not well-taken.

### B. Ineffective Assistance of Counsel

{¶ 29} In his second assignment of error, Magee argues that trial counsel was ineffective.

{¶ 30} "In order to prevail on a claim of ineffective assistance of counsel, an appellant must show that counsel's conduct so undermined the proper functioning of the adversarial process that the trial court cannot be relied on as having produced a just result." *State v. Peabody*, 2024-Ohio-185, ¶ 72 (6th Dist.), citing *State v. Shuttlesworth*, 104 Ohio App.3d 281, 287 (7th Dist.1995). Magee must demonstrate that trial counsel's

13.

performance fell below an objective standard of reasonableness, and a reasonable probability exists that, but for counsel's error, the result of the proceedings would have been different. *Strickland v. Washington*, 466 U.S. 668, 687-688, 694 (1984). "The object of an ineffectiveness claim is not to grade counsel's performance. If it is easier to dispose of an ineffectiveness claim on the ground of lack of sufficient prejudice . . . that course should be followed." *Id.* at 697.

{¶ 31} Here, Magee asserts that counsel should have objected to the unconstitutional testimony identifying him as "Chop" that he listed in his first assignment of error, and should have moved for a mistrial following the first instance of that testimony. In addition, Magee argues that a reasonable probability exists that he would not have been convicted considering the totality of the remaining evidence before the jury.

{¶ 32} However, as discussed in Magee's first assignment of error, the testimony that he listed was not hearsay and did not violate his constitutional rights. Thus, Magee has not demonstrated any prejudice from trial counsel's failure to object to that testimony, and his claim of ineffective assistance of counsel must fail.

{¶ 33} Accordingly, Magee's second assignment of error is not well-taken.

### C. Cumulative Error

{¶ 34} Finally, in his third assignment of error, Magee argues that the cumulative effect of the hearsay evidence and his inability to confront the witnesses against him made it impossible for him to have a fair trial. "Under the doctrine of cumulative error, a

14.

judgment may be reversed when the cumulative effect of errors deprives a defendant of his or her constitutional rights, even though such errors are not prejudicial singly." *State v. Gilmer*, 2024-Ohio-1178, ¶ 104 (6th Dist.), quoting *State v. Williams*, 2002-Ohio-4831, ¶ 36 (6th Dist.). "For the cumulative error doctrine to apply, there must first be a finding that multiple errors were committed at trial." *Id.*, citing *State v. Moore*, 2019-Ohio-3705, ¶ 87. "Then, there must be a finding that there is a reasonable probability that the outcome of the trial would have been different but for the combination of the separately harmless errors." *Id.*, citing *Moore* at ¶ 87.

{¶ 35} In this case, the testimony complained of was not hearsay and did not violate his confrontation clause rights. Thus, Magee has not demonstrated that any trial errors were committed, let alone multiple errors.

{¶ 36} Accordingly, Magee's third assignment of error is not well-taken.

### III.  Conclusion

{¶ 37} The testimony of Detective Sergeant Dustin Nowak was not hearsay and did not violate Magee's constitutional right to confront the witnesses against him. We find Magee's first assignment of error not well-taken. Trial counsel was not ineffective in failing to object to Nowak's testimony for those reasons. We find Magee's second assignment of error not well-taken. Magee failed to identify cumulative error requiring reversal. We find his third assignment of error not well-taken.

15.

**{¶ 38}** The judgment of the Sandusky County Court of Common Pleas is affirmed.

Magee is ordered to pay the costs of this appeal pursuant to App.R. 24.

Judgment affirmed.

A certified copy of this entry shall constitute the mandate pursuant to App.R. 27. *See also* 6th Dist.Loc.App.R. 4.

Christine E. Mayle, J.            _____
                                             JUDGE

Gene A. Zmuda, J.

                                      _____

Myron C. Duhart, J.               JUDGE
CONCUR.

                                      _____
                                               JUDGE

This decision is subject to further editing by the Supreme Court of Ohio's Reporter of Decisions.  Parties interested in viewing the final reported version are advised to visit the Ohio Supreme Court's web site at: http://www.supremecourt.ohio.gov/ROD/docs/.